UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:13-cr-00030-SEB-TAB |
| ANDRE WHITE, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON DEFENDANT'S MOTION TO SUPPRESS

This cause is before the Court on Defendant's Motion to Suppress [Docket No. 34], filed on July 5, 2013 pursuant to Federal Rules of Criminal Procedure 12(b)(3)(C). For the reasons set forth below, the motion is DENIED.

### Factual Background

The factual underpinnings of Defendant's Motion began on November 6, 2012, when Avon Police Department Patrolman Grismore responded to a citizen's complaint of a possible intoxicated driver. When Patrolman Grismore located the suspected vehicle, he activated his emergency lights signaling that the driver was to stop the vehicle. The driver of the vehicle, later identified as Defendant Andre White, initially stopped his car but then drove off as Patrolman Grismore approached. Patrolman Grismore followed Defendant but lost track of him after Defendant had abandoned the vehicle in the Washington Quarters Apartments complex and continued to flee on foot.

Patrolman Grismore and another officer searched and inventoried the contents of the abandoned vehicle, where they discovered a cellular phone, lottery tickets, drug paraphernalia,

1

and a digital scale. As the police investigation continued, Patrolman Grismore identified one of the apartments in the Washington Quarters complex—Apartment C—as having a connection to Defendant. This connection as well as a summary of the investigation up until that point was detailed in a search warrant affidavit (the "Affidavit") presented to Judge Smith in the Hendricks County Court, the contents of which are detailed below.

**The Search Warrant Affidavit**

The Affidavit recounted that Patrolman Grismore had responded to a complaint from a citizen complainant about a possibly intoxicated driver. The complainant had witnessed the vehicle stopping at a Speedway Gas Station where a black male wearing a plaid shirt and baseball cap had entered the store. The complainant then watched the driver return to the vehicle and proceed to travel on State Road 267.

Patrolman Grismore averred in his Affidavit that he first attempted to stop the vehicle at the entrance to the Washington Quarters Apartments. However, as Patrolman Grinsmore approached the vehicle, Defendant drove off, ultimately abandoning the vehicle and fleeing on foot in the area of 6363 Capitol Court, near the Washington Quarters Apartment complex. Patrolman Grismore described the driver as a, "black male wearing a plaid-type shirt and baseball cap."

Patrolman Grismore also stated in his Affidavit that having searched the area and determined that he was unable to find the driver, he then searched and inventoried the abandoned vehicle, where he discovered the lottery tickets, drug paraphernalia, and a digital scale. Patrolman Grismore also discovered a cellular telephone on the driver's seat. During that search, the telephone began to ring and the name "Dad" was displayed on the screen of the telephone identifying the incoming caller. Patrolman Grismore called the telephone number that he had

seen on the screen and spoke with an individual named Anthony White. Mr. White told Patrolman Grismore that he was attempting to telephone his son, Defendant Andre White. Patrolman Grismore next obtained a known photograph of Defendant.

Patrolman Grismore relayed in the Affidavit that a short time after the driver had fled on foot, the authorized renter of the abandoned vehicle, Latasha Dejournett, telephoned the Indianapolis Metropolitan Police Department to report the vehicle stolen. In the course of his investigation, Patrolman Grismore contacted Ms. Dejournett, who denied knowing the individual who had been driving her vehicle. Patrolman Grismore recounted that he informed Ms. Dejournett that there were penalties for filing a false police report, but Ms. Dejournett again denied knowing who had stolen her vehicle.

The Affidavit further detailed that on November 9, 2012, Patrolman Grismore went to the Speedway Gas Station where the complainant had reported seeing the driver. There, Patrolman Grismore learned that Defendant often visited that store and purchased lottery tickets there. Patrolman Grismore reviewed surveillance footage from the store taken on November 6, 2012 and observed an individual in that footage with "similar physical characteristics as the individual depicted in the known photograph of the suspect, to include facial hair. In addition, the suspect was wearing a plaid-style shirt."

Patrolman Grismore set forth the following facts in the Affidavit in support of his belief that evidence would be found at 168 Capitol Drive, Apartment C:

> Finally, while performing a background investigation on Andre White I learned of a recent address of 168 Capitol Drive, Apt C, Washington Quarters Apartments, Avon. I noted this was in the vicinity (same complex) of where Andre White had fled. After speaking with representatives from Washington Quarters Apartments I learned the individual to whom 168 Capitol Drive, Apt C is leased is Latasha Dejournett, the same individual who had reported the Kia stolen and denied knowing Andrew (sic) White. In addition, it was further reported by Washington Quarters staff that a black male had been living at 168 Capitol Drive, Apt C.

Judge Smith of the Hendricks Superior Court issued the search warrant on November 9, 2012, authorizing Patrolman Grismore to search the Subject Residence at 168 Capitol Drive, Apartment C. The authorized objects of the search were: "a plaid-style button shirt; a baseball cap with tags affixed; items of drug abuse paraphernalia and/or drugs; items further demonstrating the relationship between Latasha Dejournett and Andre White." Patrolman Grismore did not include the Defendant as an object of the search nor did he seek an arrest warrant for Defendant.

**Execution of the Search Warrant**

Patrolman Grismore and other law enforcement officers executed the search warrant on November 9, 2012. Upon their arrival at the scene, the officers found the front door barricaded by an internal bar. They were nonetheless able to gain entry, whereupon the officers encountered Defendant, who unsuccessfully attempted to flee toward the back of the residence. They detained Defendant and appraised him of his *Miranda* rights, after which he waived these rights and spoke with the officers. Defendant admitted that he lived with Ms. Dejournett at Apartment C. He also admitted having fled from Patrolman Grismore on November 6, 2012 and that he stored firearms at the residence; he further acknowledged that as a previously convicted felon, he knew he was prohibited from possessing firearms.[1]

The officers found Ms. Dejournett in the master bedroom and detained her as well. After waiving her *Miranda* rights, Ms. Dejournett admitted that Defendant had told her to report the vehicle as stolen. She also admitted that Defendant lived at Apartment C with her and her daughter, and that he owned the firearms located there.

---

[1] Defendant's criminal records reveal that he was convicted of felony Dealing in Cocaine or Narcotics in the Marion County Superior Court in 1996, felony Possession of Cocaine or Narcotic Drug in Marion County Superior Court in 1999, and a felony Possession of Cocaine or Narcotic Drug in Marion County Superior Court in 2008.

The officers searched the residence and discovered the plaid shirt, a baseball hat, drug paraphernalia, four cellular telephones, a digital scale, rolling papers and marijuana, and $8,274 in United States currency. The officers also found multiple firearms and ammunition: a Bushmaster Assault Rifle with a 100 round magazine inserted containing 5.56 millimeter ammunition; a loaded .45 caliber Colt pistol; three pistol magazines (loaded with .40 and .45 caliber ammunition); and a 30 round assault rifle magazine (5.56 millimeter); a 9 millimeter and .22 caliber ammunition.

**Federal Indictment**

Although Defendant was initially arrested by state authorities on November 9, 2012, he was later indicted by a grand jury sitting in the Southern District of Indiana for the offense of being a felon in the possession of firearms, in violation of Title 18, United States Code, Section 922(g).

**Legal Analysis**

Defendant moves to suppress the evidence obtained by the government as a result of the search of Apartment C at 168 Capitol Drive. In order to prevail on this motion, he must establish both that the search warrant issued by the Hendricks Superior Court judge was unsupported by probable cause, and that the "good faith exception" does not shield the police's conduct in acting pursuant to the warrant even if it was unsupported by probable cause.

**I.     The Validity of the Search Warrant**

In reviewing a magistrate's decision to issue a search warrant, our task is "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. McKinney,* 919 F.2d 405, 408 (7th Cir. 1990) (citing *Illinois v. Gates*, 462 U.S. 213, 250 (1983)). The Fourth Amendment reflects a "strong preference for searches conducted

pursuant to a warrant," *see McKinney*, 919 F.2d at 408; in furtherance of this preference, federal courts accord "great deference" to the magistrate's initial weighing of the evidence supporting probable cause. *See United States v. Leon*, 468 U.S. 897, 914 (1984); *United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008). "Doubtful cases should be resolved in favor of upholding the warrant." *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000).

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The United States Supreme Court has adopted an "exclusionary rule" providing that, with certain exceptions, evidence obtained in violation of the Fourth Amendment may not be used against a defendant at trial in state or federal court. *See generally Mapp v. Ohio*, 367 U.S. 643, 655–656 (1961).

"Probable cause" is a term notoriously unsusceptible to precise definition. The Supreme Court has purposely embraced an open-ended formulation, describing a probable cause determination as a "practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238 (citing *Jones v. United States*, 362 U.S. 257, 271 (1960)). "When, as here, an affidavit is the only evidence presented to a judge to support a search warrant, 'the validity of the warrant rests solely on the strength of the affidavit.'" *United States v. Orozco*, 576 F.3d 745, 748 (7th Cir. 2009) (citing *United States v. Mykytiuk,* 402 F.3d 773, 775 (7th Cir. 2005)) (additional citations omitted).

**A. The Evidence Supporting the Probable Cause Affidavit**

In the probable cause affidavit he submitted in support of his request for a no-knock warrant authorizing a search of Apartment C at 168 Capitol Drive, Patrolman Grismore provided four bases for his belief that a search of the apartment would yield evidence relating to the Defendant—namely, "a plaid-style button shirt; a baseball cap with tags affixed, items of drug abuse paraphernalia and/or drugs; items further demonstrating the relationship between Latasha Dejournett and Andre White." Def.'s Ex. 2 at 2. First, Grismore asserted that "while performing a background investigation," he had learned that Defendant had recently resided at 168 Capitol Drive, Apartment C, in the Avon Washington Quarters Apartments. *Id.* Second, he noted that this apartment was in the complex to which White had fled on foot after abandoning his car on the night that Grismore attempted to pull him over. *Id.* Grismore's final two pieces of supportive evidence came from interviews with Washington Quarters staff members, who informed him that (1) Apartment C was leased to Latasha Dejournett, the same woman who had called Grismore to report her car (the car in which Grismore found Defendant) stolen, and (2) a "black male" had been living in Apartment C. *Id.* Defendant raises objections to the consideration of three of these items of supporting evidence, which we now address in turn.

   1. **Background investigation of Defendant's Address**

Defendant contends that the issuing judge should not have given any weight to Patrolman Grismore's "background investigation"—which revealed that Defendant had a recent address at the apartment ultimately searched. Def.'s Reply 2. Reminding us that we may only consider the facts that were actually before the warrant-issuing magistrate, Defendant insists that Grismore's statement about Defendant's recent address was merely conclusory. *Id.* at 2–3.

It is undoubtedly true that, on review, a warrant based entirely on a probable-cause affidavit "must stand or fall solely on the contents of the affidavit." *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) (citing *United States v. Roth,* 391 F.2d 507, 509 (7th Cir. 1967)). "What is subsequently adduced at a hearing on a motion to suppress, therefore, cannot be used by the trial court to augment an otherwise defective affidavit." *Roth*, 391 F.2d at 509. In its response to this motion, the government attempts to clarify that Grismore's "background investigation" consisted of consulting open-source materials such as credit reporting sites. Govt.'s Resp. 8. Because Grismore gave no indication of the sources of his information in the affidavit itself, we cannot, and thus shall not, consider these additional details in assessing the weight to be accorded to Grismore's statement.

It does not follow, however, that Grismore's statement is a "conclusory allegation" entirely devoid of value to the issuing magistrate in making the probable cause determination. *Contra* Def.'s Reply 3. The Supreme Court has long recognized that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *Gates*, 462 U.S. at 235. Defendant analogizes Grismore's assertion to the affidavit under consideration in *United States v. Koerth,* 312 F.3d 862 (7th Cir. 2002), a Seventh Circuit decision invalidating a search warrant where the affidavit presented to the magistrate was based solely on the statement of a single informant. The court concluded that the affidavit contained "little more than mere conclusions and assertions of wrongdoing on the part of the defendant, without an adequate factual foundation, based on the testimony of a previously unknown informant." *Koerth*, 312 F.3d at 867.

Here, by contrast, the assertion came from the police officer himself. Although statements of background investigation or knowledge are of course not accorded blanket deference, an assertion of fact by an affiant himself is not treated the same as an unsupported, anonymous allegation. *See generally United States v. Jabero*, 368 F. Supp. 2d 702 (E.D. Mich. 2005). Had he provided details on the sources he used for his background investigation, Grismore's report that Defendant had resided at the apartment would carry more weight; nonetheless, Defendant is not warranted in contending that it must be set aside entirely.

Together with his observation that Defendant had driven his car to the Washington Quarters Apartment Complex and subsequently abandoned it there on the night of his traffic stop, the result of Grismore's background inquiry constitutes an assertion based on his own knowledge. Standing alone, these two averments might not suffice to establish probable cause; however, Grismore's affidavit also contained two important hearsay statements. We now turn our attention to the propriety of the magistrate's consideration of these statements.

**2. The information provided by apartment complex staff**

Patrolman Grismore's affidavit stated that, "[a]fter speaking with representatives from Washington Quarters Apartments," he learned that Apartment C was leased to Latasha Dejournett, the same woman who had called him shortly after his encounter with Defendant to report Defendant's vehicle as stolen. He also learned from the same source that a black male had been living in Apartment C. Def.'s Ex. 2 at 2; *see also* Govt.'s Resp. 4. As the government concedes, these two items are hearsay. Govt.'s Resp. 11 ("The United States acknowledges that a large amount of the information connecting the Defendant with the Subject Residence came from hearsay sources").

The Supreme Court's landmark decision in *Illinois v. Gates,* 462 U.S. 213 (1983), established the current framework guiding courts' consideration of whether informant hearsay satisfies the constitutional requirement of probable cause. In *Gates,* the Court disavowed the older, more rigid "two-pronged test" which required that an informant have both adequate "basis of knowledge" and sufficient "veracity" or "reliability." 462 U.S. at 228–229 (discussing *Spinelli v. United States*, 393 U.S. 410, 413 (1969)). Instead, the Court announced a more flexible "totality of the circumstances" approach:

> We agree . . . that an informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case. . . . Rather . . . they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

*Gates*, 462 U.S. at 230. The Court reasoned that a "totality of the circumstances" approach better accords with the "practical, nontechnical" nature of the probable cause inquiry as a whole. *Id.* at 231.

The Seventh Circuit has provided further guidelines for our inquiry under the *Gates* framework:

> Where probable cause is based on information supplied by an informant, we employ a totality-of-the-circumstances inquiry encompassing several factors: first, the degree to which the informant acquired knowledge of the events through firsthand observation; second, the detail and specificity of the information provided by the informant; third, the interval between the date of the events and a police officer's application for the search warrant; and fourth, the extent to which law enforcement corroborated the informant's statements. No one factor is determinative and a "deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability."

*United States v. Searcy*, 664 F.3d 1119, 1122 (7th Cir. 2011) (citing *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003)) (other citations omitted); *see also United States v. Garcia,* 528 F.3d 481, 485–486 (7th Cir. 2008); *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

Applied to this case, the Seventh Circuit's guidelines indicate that the information from the apartment staff does not raise the various concerns that animate the case law's restrictions on the use of informant statements. First, although we cannot conclude that the apartment staff acquired their information through "firsthand observation," there is ample reason to think that employees in their position would have access to reliable information about who leased a unit in their complex. We agree with the government that the apartment staff likely had "no motive to fabricate or bias on any side," since they supplied information germane to their duties and to which their jobs would provide ready, accurate access. Govt.'s Resp. 11. Defendant has provided no basis on which to question these employees' credibility. *See United States v. Emanus,* 391 Fed. Appx. 66 (2d Cir. 2010) (crediting identifying information provided to police officers by hotel employees about a guest). The information that a "black male" had been residing at Apartment C, of course, lacks specificity; the identification by name of Latasha Dejournett, however, provides as much detail as is possible given the limited nature of Grismore's inquiry to the staff members.

Grismore's affidavit does not state when, precisely, he interviewed the apartment complex staff. Since the affidavit is dated November 9, 2012 and his initial encounter with Defendant took place on the evening of November 6, 2012, however, we can surmise that the time lapse between the interview(s) and the application for search warrant was, at most, three days. *See* Def.'s Ex. 2. Such a short period eliminates concerns that the information should be

11

discounted because it is stale or outdated. *See Searcy,* 664 F.3d at 1122 (holding that a period of 72 hours renders the information "certainly not stale").

Finally, the information provided by the staff members meshes convincingly with evidence Patrolman Grismore had obtained on his own. Grismore had an independent basis of knowledge that Defendant had lived at Apartment C in the Washington Quarters Apartments. He also knew that Defendant had fled to the same complex the night of his traffic stop, and that a woman named Latasha Dejournett had called him shortly after his encounter with Defendant in circumstances he considered suspicious—his intuition that Dejournett might be falsely reporting a stolen vehicle necessarily included the intuition that Dejournett and Defendant knew each other. *See* Def.'s Ex. 2. Learning that Dejournett was the current resident of Apartment C and that a "black male" lived with her corroborated the results of Grismore's own initial investigation—and vice versa. Courts hesitate to find that secondhand information supports probable cause when it is so vague as to lack genuine predictive power, or when there is no reason to think the informant would be in a position to know "special" information. *See Alabama v. White,* 496 U.S. 325, 332 (1990); *Garcia*, 528 F.3d at 486. Here, however, the information with regard to Dejournett's name fit precisely with that which was independently available; as the government has pointed out, "the odds against this employee randomly making that name up, in light of Ms. Dejournett's other connections to the case," are quite high. *See* Govt.'s Resp. 12.

On the whole, we conclude that the evidence provided to Patrolman Grismore by the apartment complex staff, though hearsay, bears "sufficient indicia of reliability" to warrant its consideration by the warrant-issuing magistrate. *See White*, 496 U.S. at 332.

### B. The Totality of the Circumstances

The central thrust of Defendant's motion is that, while the evidence presented in Patrolman Grismore's affidavit may have established a connection between Defendant and the crime—and even Defendant and the Washington Quarters apartment complex—the evidence was insufficient to furnish probable cause for a search of Apartment C specifically. *See* Def.'s Br. 11.

"A search warrant affidavit establishes probable cause when, based on the totality of the circumstances, it sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Curry*, 538 F.3d 718, 729 (7th Cir. 2008) (citing *Mykytiuk*, 402 F.3d at 776). As the Supreme Court stated in *Gates*, "Probable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" 462 U.S. at 231 (citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). The affidavit at issue here was far from exhaustive; it is unlikely that any one of the four pieces of evidence provided by Grismore, standing by itself, would have supported the issuance of a warrant. Taken together, however, the evidence is sufficient to suggest to the mind of a magistrate that there was a "fair probability" that a search of Apartment C would yield evidence related to the crime for which Defendant was then being investigated. *See Gates*, 462 U.S. at 246. In accordance with the highly deferential standards with which we review the decisions of a warrant-issuing magistrate, we hold that the Hendricks County Court "had a substantial basis for concluding that probable cause existed." *See McKinney,* 919 F.2d at 408.

## II. The "Good Faith Exception"

We have concluded that the warrant for the search of Apartment C was valid. We note in passing, however, that Defendant's motion to suppress would fail even if the warrant were unsupported by probable cause.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court provided that "suppression of evidence seized pursuant to a search warrant that is later declared invalid is inappropriate if the officers who executed the warrant relied in good faith on the issuing judge's finding of probable cause." 468 U.S. at 920. An officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith. *United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007) (citations omitted). As formulated by the Seventh Circuit, the presumption embodied by this "good faith exception" may be rebutted, but only under limited circumstances: "A defendant can rebut the presumption of good faith only by showing that the judge issuing the warrant abandoned his/her detached and neutral role, the officers were dishonest or reckless in preparing the affidavit, or the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable." *Id*. at 398.

Defendant has made no argument that the issuing judge abandoned his detached and neutral role, or that Patrolman Grismore was dishonest or reckless in preparing the affidavit. *See* Govt.'s Resp. 15. He thus relies on the contention that the affidavit was "so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable." Defendant asserts that Grismore's evidence "consisted entirely of hearsay statements from persons whose credibility remains unknown," without "any attempt to confirm anything through personal observation or any other means . . . ." Def.'s Br. 13.

Even if the issuing judge were to have set aside the hearsay material entirely, the affidavit still contained evidence that Defendant was driving a car registered to Dejournett, that Defendant had fled from police to the apartment complex where Apartment C was located, and that Defendant had previously resided at Apartment C. *See* Def.'s Ex. 2; *see also* Govt.'s Resp. 16. Defendant cites no relevant authority for the proposition that this evidence falls so egregiously short of probable cause that a police officer would be entirely irrational in believing it worthy of execution.[2] Moreover, as we have already noted, Defendant's contention that the hearsay material must be excluded as "conclusory" is incorrect. *See supra* § I(A)(2). The affidavit here presented the issuing judge with more than an unsupported "bare bones" assertion that a search would yield evidence of Defendant's criminality. *Cf. Leon* 468 U.S. at 926. We hold that, independently of any conclusions about the existence of *bona fide* probable cause, the "good faith exception" shields the police officers' execution of the search warrant from the operation of the exclusionary rule.

## Conclusion

In *Leon*, the Supreme Court recognized that even where there is "disagreement among thoughtful and competent judges as to the existence of probable cause," the "extreme sanction" of exclusion is inappropriate where the police executed the warrant in good faith. 468 U.S. at 926. We cannot say with certainty that no reasonable judge could disagree with the Hendricks Superior Court's conclusion—and ours—that probable cause supported the search warrant at issue here. There is no doubt, however, that the evidence underlying Patrolman Grismore's affidavit crossed the relatively low threshold created by the interaction of deferential standard of

---

[2] Defendant does cite the Indiana Supreme Court case of *Jaggers v. State*, 687 N.E.2d 180 (Ind. 1997). As the government has pointed out, *Jaggers* interpreted state law rather than the requirements of the Fourth Amendment to the United States Constitution; moreover, its facts are inapposite. *See* 687 N.E.2d at 185–186 (warrant based only on the submission of an unidentified informant that Defendant was engaged in marijuana trafficking and possessed two marijuana "patches").

review and the even greater deference mandated by Supreme Court's "good faith" exception.

Accordingly, Defendant's Motion to Suppress is DENIED.

    IT IS SO ORDERED.

Date: __10/31/2013__

                                                   _/s/ Sarah Evans Barker_

                                                   SARAH EVANS BARKER, JUDGE
                                                   United States District Court
                                                   Southern District of Indiana

Distribution:

Todd Eric Ess
TODD ESS
todderic@comcast.net

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov